UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., et al., | Case No. 2:16-CV-498 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| MESA VERDE HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is defendant SFR Investments Pool 1, LLC's ("SFR") motion for partial summary judgment. (ECF No. 88). Plaintiff/counter defendant Bank of America, N.A. ("BANA") filed a response (ECF No. 98) and defendant Mesa Verde Homeowners Association ("the HOA") joined (ECF No. 100), to which SFR replied (ECF No. 104).

Also before the court is BANA's motion for partial summary judgment. (ECF No. 89). The HOA (ECF No. 102) and SFR (ECF No. 103) responded, to which BANA replied (ECF No. 108).

Also before the court is the HOA's motion for summary judgment. (ECF No. 92). BANA responded (ECF No. 99), to which the HOA replied (ECF No. 106).

Also before the court is SFR's motion for summary judgment. (ECF No. 94). BANA (ECF No. 99) and the HOA (ECF No. 101) responded, to which SFR replied (ECF Nos. 105, 107).

**I.      Facts**

This case involves a dispute over real property located at 4129 Thomas Patrick Avenue, North Las Vegas, Nevada, 89302 (the "property").

On May 27, 2008, George and Juanita Bennett obtained a loan from CTX Mortgage Company, LLC in the amount of $215,761.00, which was secured by a deed of trust recorded on May 29, 2008. (ECF No. 1). The Federal Housing Administration ("FHA") insured the deed of trust. (ECF No. 1). Mortgage Electronic Registration Systems, Inc. assigned the deed of trust to BANA on November 3, 2011. (ECF No. 1).

On March 9, 2010, Alessi & Koenig, LLC ("A&K"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $920.00. (ECF No. 1). On August 5, 2010, A&K recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $5,380.00. (ECF No. 1).

On October 13, 2011, A&K recorded another notice of delinquent assessment lien, stating an amount due of $3,545.00 and scheduling the sale for November 16, 2011. (ECF No. 1). On August 2, 2012, A&K recorded a second notice of trustee's sale, scheduling the foreclosure sale for September 5, 2012, and stating an amount due of $3,545.00. (ECF No. 1).

On September 13, 2012, BANA requested the superprioirty amount of the HOA lien from A&K. (ECF No. 89). On November 5, 2012, A&K, on behalf of the HOA, provided a statement of account identifying the total amount due of $5,715.00, but did not identify the superpriority amount. *Id.* On November 29, 2012, based on the monthly assessment amount identified in the HOA's statement, BANA calculated the superpriority amount to be $1,575.00 and tendered that amount to A&K. *Id.* The HOA rejected the payment. *Id.*

On June 3, 2013, A&K recorded a third notice of trustee's sale, scheduling the sale for July 3, 2013 and stating an amount due of $7,686.26. (ECF No. 1).

On August 7, 2013, SFR purchased the property for $20,000.00. (ECF No. 1). The trustee's deed upon sale was recorded on August 13, 2013. (ECF No. 1).

In its complaint, BANA alleges four claims of relief: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against A&K and the HOA; (3) wrongful foreclosure against A&K and the HOA; and (4) injunctive relief against SFR. (ECF No. 1).

On October 11, 2016, the court dismissed BANA's claims for wrongful foreclosure and breach of NRS 116.1113 without prejudice for failure to first submit the claims to mediation, as required by NRS 38.310. (ECF No. 52).

On November 22, 2017, the parties filed with the court a notice of completion of NRED mediation and attached a certificate stating as such. (ECF No. 109).

In the instant motions, SFR moves for partial summary judgment based on the return doctrine (ECF No. 88), BANA moves for partial summary judgment on its claim for quiet title/declaratory judgment (ECF No. 89), and SFR and the HOA move for summary judgment as to all claims asserted by BANA (ECF Nos. 92, 94).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

| | |
|---|---|
| 1 | By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). |

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## III. Discussion

As an initial matter, the court will dismiss without prejudice BANA's claim for injunctive relief, as the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

Additionally, the court will deny SFR's motion for partial summary judgment. (ECF No. 88). SFR moves for an order that "post-*Bourne Valley* [*Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016)], under the Return Doctrine, NRS Chapter 116's 'notice scheme' 'returns' to its 1991 version." (ECF No. 88).[1]

In essence, SFR requests that this court issue an advisory opinion, which Article III prohibits. *See, e.g.*, *Calderon v. Ashmus*, 523 U.S. 740, 745–46 (1998). Specifically, the United States Supreme Court has held, in relevant part, as follows:

> [T]he Article III prohibition against advisory opinions reflects the complementary constitutional considerations expressed by the justiciability doctrine: Federal judicial power is limited to those disputes which confine federal courts to a rule consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process.

*Flast v. Cohen*, 392 U.S. 83, 97 (1968).

Accordingly, the court will deny SFR's motion for partial summary judgment. (ECF No. 88).

In the HOA and SFR's motions, they contend that summary judgment in their favor is proper because, *inter alia*, the foreclosure sale extinguished BANA's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF Nos. 92, 94). The HOA and SFR further contend that the foreclosure sale should not be set aside because the price paid at the foreclosure sale was commercially reasonable, the HOA complied with all notice requirements under NRS 116 and

---

[1] The "return doctrine" provides that an unconstitutional statute is no law and the previous constitutional version of the law is revived when it is struck down. *See, e.g.*, *We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166, 1176 (Nev. 2008).

BANA received actual notice, BANA has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), and because BANA's attempted tender of the superpriority portion of the lien was not a true tender and was properly rejected. (ECF Nos. 92, 94). The court agrees.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true

superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

>  (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").

Based on *Shadow Wood*, the recitals therein are conclusive evidence that the foreclosure lien statutes were complied with—*i.e.*, that the foreclosure sale was proper. *See id.*; *see also Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 (Nev. App. Apr. 17, 2017) ("And because the recitals were conclusive evidence, the district court did not err in finding that no genuine issues of material fact remained regarding whether the foreclosure sale was proper and granting summary judgment in favor of SFR."). Therefore,

---

[2] The statute further provides as follows:

>  2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

>  3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

pursuant to *SFR Investments*, NRS 116.3116, and the recorded trustee's deed upon sale in favor of SFR, the foreclosure sale was proper and extinguished the first deed of trust.

Notwithstanding, the court retains the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See Shadow Wood Homeowners Assoc.*, 366 P.3d at 1112 ("When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief."). Accordingly, to withstand summary judgment in the HOA and SFR's favor, BANA must raise colorable equitable challenges to the foreclosure sale or set forth evidence demonstrating fraud, unfairness, or oppression.

In its motion for partial summary judgment on its claim for quiet title/declaratory relief, BANA sets forth the following relevant arguments: (1) the foreclosure sale is invalid because NRS Chapter 116 is facially unconstitutional pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"); (2) BANA offered to pay the superpriority portion of the lien, which adequately preserved the first deed of trust; (3) the foreclosure sale was commercially unreasonable; (4) SFR is not a bona fide purchaser; and (5) NRS 116 is preempted as applied to FHA-insured mortgages because it frustrates the FHA insurance program. (ECF No. 89). The court will address each in turn.

While the court will analyze BANA's equitable challenges regarding its quiet title, the court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

**A. Unconstitutionality of NRS 116**

BANA contends that *Bourne Valley* renders any factual issues concerning actual notice as irrelevant. (ECF No. 89). BANA thus maintains that it need only "show that its property rights

were extinguished pursuant to the HOA Foreclosure Statute—a statute that the Ninth Circuit has declared unenforceable and unconstitutional on its face." *Id.*

BANA has failed to show that *Bourne Valley* is applicable to its case. Despite BANA's interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158.

Further, the holding in *Bourne Valley* provides little support for BANA as BANA's contentions are not predicated on an unconstitutional shift of the notice burden, which required it to "opt in" to receive notice. BANA does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Rather, BANA merely argues that the HOA sale could not have extinguished the deed of trust because the sale was conducted pursuant to a facially unconstitutional statute. (ECF No. 89).

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). However, BANA fails on the second prong.

Here, BANA has failed to show that it did not receive proper notice. BANA received a notice of default and election to sell, as well as a notice of sale from the HOA. Therefore, BANA's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev.

- 9 -

1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Accordingly, BANA's challenge based on due process and *Bourne Valley* fails as a matter of law, and BANA's motion for summary judgment will be denied as it relates to these grounds.

**B. Rejected Tender Offer**

BANA argues that its tender of the superpriority amount on November 29, 2012 prior to the foreclosure sale preserved the first priority of the deed of trust. (ECF No. 89). BANA thus maintains that SFR took title to the property subject to BANA's deed of trust. *Id.*

The court disagrees. BANA did not tender the amount set forth in either the notice of default dated August 2, 2012 ($3,545.00) or the total stated in the statement of account requested from A&K dated November 5, 2012 ($5,715.00). (ECF No. 89). Rather, BANA tendered $1,575.00, an amount it calculated to be sufficient. *Id.*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues *and maintenance and nuisance-abatement charges*," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

BANA merely presumed, without adequate support, that the amount set forth in the notice of default or the statement of account included more than the superpriority lien portion and that a

lesser amount based on BANA's own calculations would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of default recorded on August 2, 2012, set forth an amount due of $3,545.00. (ECF No. 89). The statement of account dated November 5, 2012 set forth an amount due of $5,715.00. *Id.* Rather than tendering the $3,545.00 or the $5,715.00 due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected to pay a lesser amount based on its unwarranted assumption that the amount stated in the notice or the statement of account included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of default or the statement of account, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

**C. Commercial Reasonability**

The HOA and SFR argue that the foreclosure sale was commercially reasonable because the sale price ($20,000.00) was not grossly inadequate given the conditions under which the property was sold and because BANA has not presented any evidence of fraud, unfairness, or oppression. (ECF Nos. 92, 94).

BANA argues that the court should grant its motion because the foreclosure sale for approximately 15% of the property's fair market value ($134,500.00) is grossly inadequate and because BANA can establish evidence of fraud, unfairness, or oppression. (ECF No. 89). However, BANA overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 89) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BANA's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BANA fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BANA relies on its repeated assertion that merely offering to tender the superpriority amount is sufficient to show fraud, unfairness, or oppression. However, as discussed in the previous section, the amount due on the date of BANA's tender was set forth in the statement of account. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BANA chose to merely offer to tender what it calculated as the superiority amount.

BANA also claims that the legal uncertainty as to the authority of the CC&Rs and whether Nevada law permitted superpriority portions of HOA liens to extinguish senior deeds of trust at the time of the sale evidences unfairness. (ECF No. 89).

However, NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev.

Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in *ZYZZX2*); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104). Accordingly, language in the CC&Rs has no impact on the superpriority lien rights granted by NRS 116.

Accordingly, BANA's commercial reasonability argument fails as a matter of law, as BANA failed to set forth sufficient evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### D. Bona Fide Purchaser Status

Because the court has concluded that BANA failed to properly raise any equitable challenges to the foreclosure sale, the court need not address SFR's purported status as a bona fide purchaser for value. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *3 n.4 (Nev. App. Apr. 17, 2017) (citing *Shadow Wood,* 366 P.3d at 1114).

### E. Supremacy Clause

Lastly, BANA argues that the foreclosure sale was void because the loan was insured by the FHA. (ECF No. 89). BANA contends that the Nevada lien statute frustrates the purposes of the FHA insurance program and thus is preempted pursuant to the supremacy clause. *Id.* The court disagrees.

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to

1    HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program
2    generates funds to finance the program. *See* 24 C.F.R. § 291.1.

3    At least two courts in this district, including this court, have previously held that the Nevada
4    foreclosure statutes directly conflict with the FHA insurance program, and are therefore
5    preempted. *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, No. 2:13–
6    CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015); *Wash. & Sandhill*, 2014
7    WL 4798565, at *1.

8    However, more recently, multiple courts in this district, and the Supreme Court of Nevada,
9    have held that the FHA insurance program does not conflict with the Nevada foreclosure statutes.[4]
10   *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1184 (D. Nev. 2015)
11   ("Nothing prevents a lender from simultaneously complying with HUD's program and Nevada's
12   HOA-foreclosure laws."); *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 200 F. Supp. 3d
13   1141, 1166 (D. Nev. 2016) ("The Court concludes that conflict preemption does not apply in this
14   case. Lenders are perfectly capable of complying with both HUD's program and NRS 116.3116 .
15   . . ."); *Renfroe v. Lakeview Loan Servicing, LLC*, 398 P.3d 904, 909 (Nev. 2017) ("Because the
16   HUD guidelines for the FHA insurance program clearly contemplate and anticipate statutory
17   schemes such as NRS 116.3116, the doctrine of conflict preemption does not apply in this case.").
18   These opinions provide persuasive reasoning to support the assertion that a lender can comply with
19   both the HOA foreclosure laws and HUD's insurance program.

20   Accordingly, the Nevada foreclosure statutes do not directly conflict with the FHA
21   insurance program for preemption purposes. *See Renfroe*, 398 P.3d at 909. Thus, BANA's
22   preemption argument does not justify setting aside the underlying foreclosure sale.

23   **IV.  Conclusion**

24   After failing to use the legal remedies available to BANA to prevent the property from
25   being sold to a third party—for example, seeking a temporary restraining order and preliminary

---

[4] This court's recent holdings on the topic, including a prior order in this case, have declined to address the issue, holding that as FHA was not a named party the arguments regarding preemption were not properly before the court. *See* (ECF No. 29); *see also,, e.g., Carrington Mortg. Serv., LLC v. Montecito Village Community Ass'n*, case no. 2:16-cv-01780-JCM-PAL, 2017 WL 2945725, at *9 (D. Nev. July 7, 2017).

**James C. Mahan**
**U.S. District Judge**

- 15 -

injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060), or tendering the fully amount set for in the statement of account—BANA now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

However, in light of the foregoing, the court finds that BANA has not raised sufficient equitable grounds to set aside the foreclosure sale. Further, BANA has not put forth sufficient evidence to support its claims for wrongful foreclosure or breach of NRS 116.1113. Accordingly, the court will grant the HOA and SFR's motions for summary judgment. (ECF Nos. 92, 94). The court will also deny BANA's motion for partial summary judgment as to BANA's quiet title/declaratory judgment claim. (ECF No. 89).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion for partial summary judgment (ECF No. 88) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's motion for partial summary judgment (ECF No. 89) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 92) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the SFR's motion for summary judgment (ECF No. 94) be, and the same hereby is, GRANTED.

. . .

. . .

The clerk is instructed to enter judgment accordingly and close the case.

DATED June 18, 2018.

_____
UNITED STATES DISTRICT JUDGE